IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATOSHA NELSON,           :         CIVIL ACTION
     Plaintiff,             :
                          :
     v.                   :
                          :         NO. 20-6125
KILOLO KIJAKAZI, [1]      :
Acting Commissioner of the    :
Social Security Administration,  :
     Defendant.        :

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE            January 9, 2023

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Katosha B. Nelson ("Nelson") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 14); Defendant's Response to Request for Review of Plaintiff ("Def. Br.") (Doc. 21); and Plaintiff's Reply Brief ("Pl. Reply") (Doc. 22); together with the record of the proceedings before the Administrative Law Judge ("ALJ") and the Appeals Council (hereinafter "R.") (Doc. 12). Plaintiff asks the Court to vacate the ALJ's decision and remand the matter for additional administrative proceedings. The Commissioner seeks the entry of an order affirming the decision of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant.

the ALJ that Plaintiff was not disabled.  For the reasons set out below, we will vacate the decision of the ALJ and remand the matter for further administrative proceedings.

## I.      PROCEDURAL HISTORY

Plaintiff filed the application for SSI with which this appeal is concerned on August 1, 2018, alleging disability since March 15, 2018.  She had last worked in the first quarter of 2018, in a cleaning postition.  Her claim was denied initially on January 11, 2019.  She requested an administrative hearing before an ALJ, which was held on November 25, 2019 and at which both she and a vocational expert ("VE") testified.  The ALJ issued an unfavorable decision on January 8, 2020.  Plaintiff requested review in the Appeals Council, but that body denied her request on October 16, 2020, making the ALJ's decision the final determination of the Commissioner. (R. 1-6.) Plaintiff initiated this suit thereafter.

## II.     LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  This Court must determine whether substantial evidence supports the Commissioner's final decision that the claimant was not disabled.  42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).  It is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552.  The Commissioner's factual findings must be accepted as conclusive, provided they are supported by substantial evidence.  *Richardson*, 402 U.S. at 390 (citing 42 U.S.C.

§ 405(g)); *Rutherford*, 399 F.3d at 552.   The review of legal questions presented by the Commissioner's final decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.   FACTUAL BACKGROUND

Nelson had a past work history as a janitor / cleaner.  She developed degenerative changes in the lumbar spine, for which she received physical therapy, non-narcotic pain management treatment, and a surgery consultation in 2018 and 2019.  Her adult daughter, with whom she lived, was paid to serve as her home health aide beginning in September 2019 and assisted her with bathing, meal preparation, light housekeeping, laundry, and shopping.  (R. 22.)  An adult son also lived in the household.

Nelson sought out mental health treatment beginning in August 2018 at the Tree of Life behavioral health clinic.  She reported depressive moods, anxiety, social withdrawal, daily mood swings, and angry outbursts when she was frustrated or overwhelmed.  The staff psychiatrist diagnosed her with major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia.  (R. 22.)  In follow-up visits, her medication was adjusted in an attempt to better control her symptoms and to avoid side effects.  By February 2019, the psychiatrist noted her to be "slowly responding to medications and to weekly therapy."  (R. 609.)

Therapy notes show regular reports of ongoing issues with anxiety, depression, and angry outbursts at home, even as Nelson presented with largely normal findings on mental status examinations both at her psychiatric visits and her therapy sessions.  (R. 22.)  Despite months of treatment, in March 2019 her therapist noted her complaints of continued "struggles with symptoms of anxiety[,] anger and frustration daily across setting at least once every hour."  (R. 606.)  The therapist noted that, while Nelson was compliant with medication, she "has struggled to attend"

therapy, and they agreed that Nelson would call to schedule her next session when she felt a decrease in symptoms.  (*Id.*)  It was not until November 2019 that she appeared to have returned, after "report[ing] isolating in her room, including from her children who live with her," and feeling "anxiety about leaving her home," which she described as her "comfort zone," and which she left primarily only for medical appointments.  (R. 605.)

## IV.    DECISION UNDER REVIEW

The issue before the ALJ was whether Nelson was disabled under section 216(i) and 223(d) of the Act from the application date of August 1, 2018 through January 8, 2020, the date of decision. The ALJ relied upon the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a). At Step One, he found that Nelson had not engaged in substantial gainful activity since the application date.  (R. 17, Finding No. 1.)  At Step Two, he found that Nelson had several medically-determinable impairments – including lumbar degenerative disc disease with radiculopathy, affective disorder, and anxiety disorder – that significantly limited her ability to perform basic work activities. (*Id.*, Finding No. 2.)  At Step Three, he concluded that these severe impairments, whether considered individually or in combination, did not satisfy the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1, including specifically Listing 1.04 (disorders of the spine), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive compulsive disorders).  (R. 17-18, Finding No. 3.)  Plaintiff does not specifically challenge these findings.

The ALJ then proceeded to assess Nelson's residual functional capacity ("RFC"), which reflects an individual's maximum ability to do physical and mental work activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. §§ 416.920(e), 404.1545.  He found:

> **4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that she can frequently use foot controls with no climbing of ropes,**

4

**ladders, or scaffolds and no more than occasional performance of
other postural activities.  She can tolerate frequent exposure to
unprotected heights and moving mechanical parts and is limited
to the performance of routine and repetitive tasks that are not at
a production rate pace.  Finally, she is limited to work requiring
simple work-related decisions with occasional interaction with
supervisors and co-workers and no interaction with the public.**

(R. 20, Finding No. 4.)  The ALJ then applied this finding to Step Four.  He determined that Nelson

could not perform past relevant work, as the requirements of her past position as a janitor/cleaner

required her to perform work at the "light" exertional level, which was precluded by her RFC for

only "sedentary" work. (R. 26, Finding No. 5.)

At Step Five, the ALJ assessed whether Nelson was capable of performing any other jobs

that exist in significant numbers in the national economy considering her age (as a "younger

individual" as of her application date), her limited education, her English language skills, and her

RFC.  At the hearing, the VE had testified that a hypothetical individual with the vocational profile

described by the ALJ could perform the functions of several representative unskilled occupations at

the sedentary exertional level, including: addresser, sorter, and inspector.  (R. 27.)  In light of this

testimony, the ALJ concluded that Nelson was capable of making a successful adjustment to other

work in the national economy and thus was not disabled. (R.26-27.)

## V.    DISCUSSION

Nelson asserts that "the ALJ's decision is not supported by substantial evidence" in that he

failed to properly evaluate the medical evidence, particularly the treatment record from the Tree of

Life clinic.  (Pl. Br. at 2, 6.)  We agree that the ALJ failed to reconcile his conclusion that Nelson's

mental health condition was "stable" and that she could engage in substantial gainful activity

because she was "continued" on a medication regimen with the records from her outpatient mental

health treatment at the Tree of Life clinic showing continued serious symptomatology.

As part of the analysis undertaken to reach a finding as to RFC, the ALJ provided two lengthy paragraphs describing the Tree of Life records, found in the record before us at Exhibits B2F and B10F.  He recognized that:

> With regard to her mental impairments, the therapy records from Tree of Life Behavioral Services show that in August 2018, the claimant presented for therapy and reported depressive moods, anxiety, social withdrawal, daily mood swings, and angry outbursts when frustrated or overwhelmed.  On examination, she was alert and oriented with normal appearance, cooperative behavior, depressed and anxious mood, and logical cognition.  Later in the month, she reported worsening symptoms in the context of increased home environment stressors.  When she returned in September, she presented as emotionally stable and stated that medication has been helpful.  The additional notes from 2018 and 2019 show that the claimant presented for regular sessions focused on anger management, grieving, and improving her coping skills including deep breathing and calming techniques.  She regularly reported ongoing issues with anxiety, depression, and angry outburst[s] and displayed stable and generally normal findings on mental status examinations during her sessions.  She also reported ongoing stress related to family relationships and financial concerns but also regularly reported improvement in her sleep[2] and other symptoms with regular therapy and medication. (Exhibit B10F).

(R. 22.)  With respect to the documentation produced by the staff psychiatrists at the clinic, the ALJ noted:

> In August 2018, the claimant presented to Tree of Life Behavioral Services for a psychiatric evaluation during which she reported depression and anxiety with panic attacks, poor energy and motivation, and crying spells.  On mental status examination, she was fully oriented with calm and cooperative behavior, regular speech, anxious and depressed affect, goal directed thought processes, adequate memory skills, no evidence of psychosis, average estimated intelligence, good insight, and intact judgment.  She was diagnosed

---

[2]  See *infra* for an analysis of what Nelson reported as to continued sleep difficulties.

with major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia. The medication management records show that in September, she reported continuing to feel anxious and depressed with negative side effects from Zoloft. She was switched to Lexapro, continued on Trazodone, and started on Klonopin for her ongoing symptoms. (Exhibit B2F). The additional records show that in October, the claimant reported ongoing depression despite medication. She presented as cooperative with depressed and anxious affect, goal directed thoughts, no hallucinations or delusions, good insight, and intact judgment. She was continued on an adjusted regimen of medication. During her February 2019 visit, she reported ongoing depression following the death of a family member. She displayed generally normal findings on mental status examination and it was noted that her condition was stable overall. She was continued on her stable regimen of medication, including Lexapro, Trazodone, and Klonopin. (Exhibit B10F).

(R. 22-23.) The ALJ returned to touch upon the Tree of Life records when he offered his analysis of the consistency of Nelson's statements concerning her symptoms with the medical evidence and other evidence in the record. He characterized the records of her therapy and medication management since August 2018 as showing "that she reported some improvement in her sleep and other symptoms with generally normal or minimal positive findings on clinical examinations through regular treatment including a regimen of medication with some minimal adjustments." (R. 25 (citing Exs. B2F and B10F).) He also compared an opinion by a state agency psychological consultant with what he characterized as "the mental health treatment records documenting the claimant's reports of depression, anxiety, and anger issues but also her generally normal or mild presentation during mental status examinations and her reports of at least partial improvement in her symptoms with regular therapy and medication." (R. 25 (citing Exs. B2F and B10F).)

The ALJ's characterization of what the Tree of Life records show is not grounded in the actual record. The ALJ correctly recounts that the reports of the mental status examinations were consistently normal, in that Nelson was always alert and oriented to person, time, and place – e.g.,

not delusional or confused.  The treatment records did not, however, show meaningful improvement with therapy and medications.  The penultimate therapy note in the record, from March 7, 2019 at Tree of Life noted:

> [Nelson] reported that she continues to experience symptoms of anxiety/ panic attacks behavior, grief depressive moods, worrying sleepless depressive symptoms).  [Nelson] continues to struggle[] with symptoms of anxiety anger and frustration daily across settings at least once every hour.  She disclosed that her symptoms present at a rate of duration of 1 hour intervals at least once a day in her community.

(R. 606.)  The therapist spoke with her about the triggers and antecedents to her symptoms of depressive and anxious moods and anger, particularly "public environment with large groups" and life stressors.  (*Id.*)  The therapist noted that Nelson displayed an "increase in current symptoms due to major loss in her family" and that she "struggled to attend session daily."  (*Id.*)  They did not set the next appointment but agreed that Nelson would call to schedule when she felt her symptoms had decreased.  (*Id.*)  The next therapy treatment note from Tree of Life that is contained in the record dated to November 15, 2019, which would indicate that Nelson's symptoms inhibited her ability to make or attend a therapy appointment for some 8 months.  A new therapist with whom she met on that date memorialized her report that:

> Currently stays in her room in her home most of the time, states her house is her "comfort zone", mostly only goes out for dr. appt. [H]as difficulty sleeping at night.  Reports depression and mood swings, crying a lot.  Sometimes will not bathe for several days; won't eat then will eat a lot. … States her 21 and 22yo children who live with her are supportive and will check on her, she will shoo them away. Avoids contact with family ….  In her room mostly sleeps, watches TV, states her mind wanders.

(R. 605.)  On this record, we are unable to find substantial evidence supporting the ALJ's characterization of her having experienced an improvement in her symptoms, nor can we find the

8

fact that she was "alert and oriented" on mental status examination to be particularly significant to the question of her ability to engage in substantial gainful activity.

The ALJ similarly mischaracterized or misunderstood other aspects of the record to the detriment of Nelson.  For example, in support of his conclusion that her RFC was not more restrictive than what he found, the ALJ cited to her "admissions regarding her ongoing high level of regular activities and interactions[.]"  (R. 24.)  Yet the "admissions" to which the ALJ refers – consisting of Nelson's statements in questionnaires completed as part of her disability application and her statements to the consultative examiner – hardly reflect a healthy degree of functioning.  As the ALJ himself recounted, the record shows that Nelson has shopped and prepared food, but with her adult children, with whom she had a good relationship and who also remind her of her obligations; she spends her day sitting in her room and does not participate in social or community activities; and she attends medical and mental health appointments.  (R. 24.)[3]  The more recent records from Tree of Life clinic, however, also show that she struggled to make her mental health appointments, despite these family supports, thus undermining the force of the ALJ's argument.

The ALJ had relied upon a perceived improvement in her symptoms to justify a reviewing psychologist's assessment that Nelson's functional limitations would be only mild to moderate.  (R. 25.)[4]  He reasoned that her condition did not prevent her from engaging in an "ongoing high level of

---

[3]  The ALJ also made mention here of the fact that Nelson "crochets."  (R. 24.)  Yet as he acknowledged earlier in his decision, when Nelson reported to the consultative examiner was that "she *used to* crochet but has been unable to finish any of her recent[] projects."  (R. 19, emphasis added.)  This hardly supports a finding that Nelson was engaging in "high level" ongoing activities.

[4]  While the ALJ characterized the record "overall" as showing improvement in her symptoms, with
*(continued…)*

regular activities and interaction."  (R. 26.)  Again, however, this interpretation is belied by the treatment record showing she was unable to meet the therapist's November 8, 2018 recommendation of twice weekly sessions, as she "even struggles to attend sessions" of therapy on a weekly basis due to "isolate[ion] in her home for duration of 5 to 6 days a week." (R. 618.)  The therapist noted the following week that Nelson "felt overwhelmed after traveling there to the session." (R. 617.)  The therapy record documents that Nelson "[c]ontinue[d] to isolate herself in her bedroom from her family and community daily" (R. 615, note of 11/21/18) and that "she displays isolation behaviors and struggles to exchange with her peer group socially due to symptoms."  (R. 610, noted of 12/13/18).  Given the record before him and the evidence that his characterization of the record is not based upon a fair reading of the record, we cannot find the ALJ's conclusions about Nelson's mental functional capacity to be supported by substantial evidence.  Therefore, we will remand this matter for further evaluation.  An appropriate order follows.

---

specific reference to her report of some improvement in her sleep, *see* R. 25, the Tree of Life records document just the opposite.  The October 11, 2018 treatment note documented improvement in her sleep.  (R. 622.)  The following month, however, on November 15, 2018, Nelson reported insomnia (R. 617), and on December 4, 2018 she again reported that she was experiencing "limited sleep." (R. 613.)  On December 11, 2018, her therapist documented further complaints that she was "sleepless," (R. 611), as she was on March 7, 2019 (R. 606).  As of November 5, 2019, she again reported "difficulty sleeping at night."  (R. 605.)